IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEBRADRE D. JACKSON,

                           OPINION AND ORDER

        Plaintiff,

                           20-cv-360-bbc

        v.

DR. TRICIA LORENZ, SHERYL KINYON,
AND DR. EILEEN GAVIN,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff DeBradre Jackson, a former prisoner at the Wisconsin Secure Program Facility, is proceeding on claims that Dr. Eileen Gavin, Dr. Tricia Lorenz, and Sheryl Kinyon failed to provide him treatment for his hepatitis C infection. Now before the court are defendants' motions for summary judgment. Dkt. ## 75, 83, 89. The court extended plaintiff's deadline for responding to the motions after plaintiff reported that he had not received the motions and that he was soon to be released; I also directed defendants to re-send their motions and supporting affidavits to plaintiff's new address. 3/28/22 Text-only order, dkt. #95. Although all defendants have certified that they mailed their summary judgment materials to plaintiff at his new address, plaintiff has not responded to defendants' motions or refuted their evidence in spite of being advised of his deadline for doing so. Accordingly, the motions are unopposed. Because defendants' undisputed evidence shows that none of them was deliberately indifferent or acted negligently with respect to plaintiff's hepatitis C infection, I will grant the motions.

1

UNDISPUTED FACTS

A. The Parties

Plaintiff DeBradre Jackson was a prisoner at Wisconsin Secure Program Facility ("WSPF") from November 4, 2019 to April 21, 2020. Defendants worked at WSPF during the relevant time period: Dr. Eileen Gavin and Dr. Tricia Lorenz were physicians at the prison, and Sheryl Kinyon was the Health Service Assistant Manager ("HSAM").

As HSAM, Kinyon's role was to assist the Health Services Unit ("HSU") Manager in managing the health care services provided by HSU. It was not Kinyon's job to provide medical care to patients herself. Medical care was provided by HSU nursing staff and advanced care providers such as physicians, nurse practitioners, and physician assistants. Kinyon and the nurses in the HSU were not authorized to override an advanced care provider's medical decisions unless they had reason to believe the decision placed a patient's life in danger, in which case they could report the information up the chain of command at the institution. Kinyon had no responsibility for making or approving treatment plans, evaluating or treating patients, referring patients to offsite providers or prescribing medications.

B. Plaintiff Tests Positive for Hepatitis C

Shortly after plaintiff arrived at WSPF, on November 7, 2019, he was seen by Dr. Gavin, who ordered blood work for him. Dr. Gavin ordered the blood work as part of routine labs in preparation for plaintiff's upcoming release, and because plaintiff said he

wanted to be checked for diabetes.  At that time, Dr. Gavin did not suspect or have reason to suspect plaintiff had a hepatitis C infection.

Dr. Gavin's last day of work at the institution was November 26, 2019.  The next day, November 27, 2019, plaintiff's test results came back, showing elevated levels of liver enzymes.  On December 12, 2019, Dr. Adebola Ibirogba ordered additional blood work, including a hepatitis panel, which was completed on the next scheduled lab day, January 15, 2020.  (In a previous order, I granted summary judgment in favor of Dr. Ibirogba because undisputed evidence showed that Dr. Ibirogba was no longer working at the institution when plaintiff's second set of lab results came back.  Dkt. # 43.)

Plaintiff's lab results showed a presumptive positive finding of hepatitis C Virus ("HCV").  Hepatitis C is a viral infection that attacks the liver and leads to inflammation. Most people have no symptoms and urgent treatment is not required unless there is an acute complication, which plaintiff did not have.

The Department of Corrections has a policy entitled "HCV Treatment Evaluation Care Plan."   None of the defendants was responsible for developing this policy, which was established by the Division of Adult Institutions' Bureau of Health Services.  The HCV treatment plan sets out the following four steps for health providers to take for inmates who are HCV positive:  (1) conduct an initial evaluation; (2) consider any treatment contraindications; (3) obtain a number of labs and tests to determine appropriateness for treatment, including a baseline ultrasound elastogram (also known as a "fibroscan") to determine the patient's fibrosis score (which is used to determine whether treatment is

3

indicated and what type); and (4) establish a monitoring plain for those patients who do not qualify for treatment. After a patient receives all of the necessary work-up and testing to determine if HCV treatment is indicated, a request must then be made to a committee, which ultimately must approve treatment before it can be ordered, coordinated, and initiated by a physician and HSU. Assuming an inmate is approved for treatment, the average treatment time is 12 weeks. After treatment is completed, additional monitoring of the inmate is required. The entire process to finish the initial evaluation, obtain the fibroscan and work-up, and complete the treatment and follow-up testing takes a minimum of six months.

The HCV treatment policy provides that an inmate should not begin treatment unless he will be incarcerated for a sufficient time period to complete the treatment. If an inmate cannot complete treatment prior to his mandatory release date, then treatment should be arranged in the community. Starting treatment on an inmate who is released mid-way through the protocol is potentially unsafe because treatment requires frequent monitoring by health providers to ensure proper medication dosing and to check for adverse side effects. On the other hand, there is no known benefit to partial HCV treatment.

### C. Plaintiff's Medical Care

On January 27, 2020, Dr. Lorenz began working as a physician in WSPF's Health Services Unit. On January 29, 2020, Nurse Erin Wehrle asked Lorenz to review plaintiff's lab results. Dr. Lorenz reviewed plaintiff's lab results that day and learned that plaintiff was

to be released from the institution in less than three months. She also reviewed the DOC's "HCV Treatment Evaluation Care Plan." Dr. Lorenz determined that plaintiff was not a candidate for HCV treatment because there was insufficient time for him to undergo full evaluation and complete treatment before his release. Accordingly, Dr. Lorenz determined that the safest course would be to monitor and test plaintiff consistently with Step 4 of the HCV Policy.

On February 26, 2020, plaintiff was seen in the HSU after submitting a request asking to be seen for right ear pain and to discuss his lab results. That same day, he was seen by Nurse Practitioner Janet Cochran, who reviewed plaintiff's labs with him and explained his HCV diagnosis. Cochran conferred with Dr. Lorenz, who confirmed that plaintiff did not meet the criteria for treatment for his hepatitis C infection because of his approaching mandatory release date on April 21, 2020. Two days later, plaintiff again spoke in person with Cochran, who provided him educational materials about the different types of hepatitis, as well as home care instructions to help him care for himself after his release. Plaintiff was also given the option of undergoing a fibroscan and various other predicate testing.

Plaintiff submitted two interview/information requests on February 28, 2020 and one Health Services Request on March 1, 2020, complaining about his lack of treatment for his hepatitis C infection. Addressing these requests, Kinyon contacted Cochran, who confirmed that the DOC's hepatitis C treatment policy was correct and that plaintiff was not a candidate for treatment because he had less than 12 weeks until his release. Cochran confirmed that this was correct and that the timeframe to complete all components of the

5

hepatitis C treatment protocol was more like six months. On March 3, 2020, Kinyon wrote to plaintiff and explained that there was not enough time left of his prison stay for him to complete the necessary steps before starting treatment, let alone the 12 weeks for the treatment itself. Kinyon encouraged plaintiff to pursue treatment upon his release from prison the following month.

Kinyon did not help develop or create the DOC's hepatitis C treatment policy and she is not responsible for enforcing that policy. It was up to the advanced care providers to determine plaintiff's course of treatment for his diagnosis and whether there was enough time to complete treatment.

Dr. Lorenz's last day working at WSPF was March 5, 2020. On or about March 11, 2020, plaintiff had multiple tests performed. He was scheduled for a fibroscan but it was delayed due to Covid-19 restrictions.

Plaintiff was released from WSPF on extended supervision on April 21, 2020.

## OPINION

### A.  Eighth Amendment Deliberate Indifference

To prevail on a claim for inadequate medical care under the Eighth Amendment, plaintiff must show that a prison official was "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266

(7th Cir. 1997). For purposes of summary judgment, defendants concede that plaintiff's hepatitis C presented a serious medical need, so I need not address that issue. King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012). Defendants argue that plaintiff's claims fail because he cannot establish that any defendant was deliberately indifferent to his serious medical need. I will address plaintiff's claims against each defendant below.

1. Dr. Gavin

In his complaint, plaintiff alleged that Dr. Gavin acted with deliberate indifference to his hepatitis C infection by ordering blood work and then failing to meet with him about the lab results after they came back on November 27, 2019. However, it is undisputed that Dr. Gavin never saw the lab results or had access to them: her last day of work at the institution was on November 26, 2019. The mere fact that Gavin ordered tests is not sufficient to prove that she disregarded plaintiff's serious medical needs. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (setting forth standard for proving Eighth Amendment medical care claim). Accordingly, I will grant Gavin's motion for summary judgment.

2. Dr. Lorenz

In his amended complaint, plaintiff asserts that Dr. Lorenz had time between "11/27/2019 and 1/15/2020 thru (sic) 4/21/2020" to provide him HCV treatment. However, the facts adduced by defendant shows that assertion to be incorrect. Plaintiff did not have a diagnosis of HCV until after he had lab work done on January 15, 2020. Dr. Lorenz

reviewed those results on January 29, 2020. At that time, plaintiff had less than three months before his release date. According to defendants' undisputed evidence, the process to evaluate, approve, and obtain HCV treatment for plaintiff— assuming he was found to be an appropriate candidate—would have taken at least six months. Accordingly, the entire factual predicate for plaintiff's complaint against Lorenz, namely, that plaintiff could have completed HCV treatment before his release, is unfounded.

As a result, plaintiff cannot show that Dr. Lorenz acted with deliberate indifference to plaintiff's HCV when she failed to provide him with treatment. There was simply no time for plaintiff to complete all the predicate steps *and* complete plaintiff's treatment before he was released on extended supervision. Moreover, plaintiff has not disputed defendant's evidence that starting HCV treatment on an inmate who would be released prior to its completion would be unsafe. Because the time remaining on plaintiff's sentence was a factor beyond Dr. Lorenz's control, she did not act wantonly or with conscious disregard of a known risk when she stated that plaintiff was not a candidate for HCV treatment. Wilson v. Seiter, 501 U.S. 294, 303 (1991) (whether official's conduct can be characterized as "wanton" depends upon the constraints facing the official). What is more, plaintiff has not adduced any evidence that Lorenz's medical decision-making caused him any harm. Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (guard not liable for deliberate indifference if there was no "detrimental effect" from guard's refusal to obtain care for inmate). Without such evidence, plaintiff cannot sustain a deliberate indifference claim against Lorenz.

3. Kinyon

It is undisputed that Kinyon is not a doctor or an advanced care provider, and that she did not treat plaintiff. In addition, she was not responsible for developing or enforcing the Department of Corrections' policy concerning hepatitis treatment.

In his complaint, plaintiff alleges that Kinyon ignored his questions about treatment for his hepatitis C and told him that the doctors had responded reasonably. But the undisputed evidence shows that Kinyon did not "ignore" plaintiff. Rather, after receiving his interview requests regarding treatment for his hepatitis, Kinyon spoke with Cochran to confirm that plaintiff was not a candidate for hepatitis treatment because of his impending release. She then conveyed that information to plaintiff in a letter sent to him just days after he submitted his interview requests. Kinyon was not authorized to order hepatitis C treatment for plaintiff or to refer him to outside specialists, so it is unclear what more plaintiff thinks Kinyon should have done. See Miller v. Harbaugh, 698 F.3d 956, 962 (7th Cir. 2012) (prison officials not liable under Eighth Amendment if "remedial step was not within their power"). In short, no reasonable jury could conclude from these facts that Kinyon was deliberately indifferent to plaintiff's hepatitis C condition. Accordingly, the Eighth Amendment claim against Kinyon will be dismissed.

B. State Law Medical Negligence

Plaintiff also brings negligence claims against defendants, but these claims must be dismissed as well. Plaintiff's claim against Kinyon must be dismissed for the same reasons

9

as above and because it is undisputed that he never filed a notice of claim with respect to her, as required under Wis. Stat. § 893.92. Weinberger v. Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997) ("Section 893.82 is jurisdictional and strict compliance is required."). As for the claims against Drs. Gavin and Lorenz, plaintiff cannot prevail on his negligence claims for the same reason he cannot prevail on his deliberate indifference claims: (1) Gavin did not know plaintiff had elevated liver enzymes because she did not work at the institution when plaintiff's lab results came back; and (2) Lorenz acted reasonably under the circumstances and plaintiff has no evidence that her actions caused him any injury. Paul v. Skemp, 2001 WI 42, 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865 (setting forth standard for proving Wisconsin negligence claim). Accordingly, plaintiff's negligence claims fail.

ORDER

IT IS ORDERED that the motions of defendants Dr. Eileen Gavin, Dr. Tricia Lorenz, and Sheryl Kinyon for summary judgment, dkt. ## 75, 83, 89, are GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 15th day of June, 2022.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge